IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JONATHAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CASE NO. 3:08-cv-00515 |
| v. | ) | JUDGE TRAUGER / KNOWLES |
| | ) | |
| | ) | |
| MR. CAMPBELL SMOOT, MR. DALE CONN, | ) | |
| MR. JEFF STOCKWELL, MR. JOSEPH | ) | |
| DARNELL, JOHN WILEY ROLLINS, | ) | |
| CHARLES MICHAEL LAYN, RANDAL | ) | |
| LARRY GILLIAM, MARLA R. HOLLOWAY, | ) | |
| JASON PONDER, KENNETH J. SHELTON, | ) | |
| JR., MRS. PARRISH (FNU), ROBERT BO | ) | |
| IRVIN, CHARLES TRAGHBER, JAMES | ) | |
| AUSTIN, YUSEF A. HAKEEM, ROMMIE | ) | |
| COLE, LYNN DUNCAN, PATSY BRUCE, | ) | |
| LARRY HASSELL, INMATE COUNSELOR | ) | |
| MR. (FNU) BROWN, WARDEN FLORA | ) | |
| HARDEN, C.O. 1 COLLINS, WARDEN | ) | |
| TOMMY MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon a Motion to Dismiss filed by Defendant David Brown, Inmate Counselor (Docket Entry No. 51) and a Motion to Dismiss filed by Defendants John Wiley Rollins, Circuit Court Judge; Charles Michael Layne, Assistant District Attorney; Marla R. Holloway, Assistant District Attorney; Jason Ponder, Assistant District Attorney; Kenneth J. Shelton, Jr., Assistant District Attorney; Randall Larry Gilliam, Assistant District

1

Attorney; Campbell Smoot, District Public Defender; Jeff Stockwell, Assistant Public Defender; Dale Conn, District Investigator; Robert Bo Irvin, Executive Director of the Board of Probation and Parole; Ronnie Cole, Board of Probation and Parole Member; James Austin, Board of Probation and Parole Member; Yusef A. Hakeem, Board of Probation and Parole Member; Lynn Duncan, Board of Probation and Parole Member; Larry Hassell, Board of Probation and Parole Member; Patsy Bruce, Board of Probation and Parole Member; Charles Traughber, Board of Probation and Parole Chairman; Joseph Darnell, Board of Probation and Parole Officer; Angela Parrish, Board of Probation and Parole Officer; Flora Harden, Warden; and Tommy Mills, Warden (Docket Entry No. 38). In support of their Motions, Defendants have contemporaneously filed Memoranda of Law. Docket Entry Nos. 39 and 52. The two Motions to Dismiss cover all the Defendants named in Plaintiff's "Amended Complaint," with the exception of "C. O. 1 Collins," who has not been served.[1]

Plaintiff has filed a "Response to Defendant's [*sic*] Motion to Dismiss Complaint" (Docket Entry No. 55) and a "Motion in Opposition to Defendants Motion to Dismiss Plaintiff's Complaint on the Grounds of Being Absolutely Immune from Suit" (Docket Entry No. 62), as well as a supporting Memorandum of Law (Docket Entry No. 62).

Plaintiff, who is an inmate in the custody of the Tennessee Department of Correction, filed this pro se action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth, Eighth, and Fourteenth Amendment rights, as well as "conspiracy," and the pendent state law

---

[1] The record reflects that service upon Officer Collins was refused by the staff at Northwest Correctional Complex because she was no longer employed there. Docket No. 20. Even though Officer Collins is not a party to the instant Motions, for reasons that will be discussed below, the undersigned recommends that Plaintiff's claims against her be dismissed.

2

claims of malicious prosecution, "malicious harassment," intentional infliction of emotional distress, "outrageous conduct," excessive force, "official oppression," "official misconduct," false arrest, civil conspiracy, false imprisonment, and abuse of process. Docket Entry No. 1. Plaintiff sues Defendants Smoot, Stockwell, Darnell, Layne, Gilliam, Holloway, Ponder, Shelton, Parrish, Irvin, Traghber, Austin, Hakeem, Cole, Duncan, Bruce, Hassell, Brown, Harden, and Mills in their individual capacities and Defendants Conn and Rollins in their individual and official capacities. *Id.*

Plaintiff, an African-American male, is a convicted felon who had plead guilty to possession of a schedule II drug and evading arrest in June 2006.[2] He was on probation when he was arrested on or about January 4, 2007, on domestic violence charges, which the victim, a Caucasian female from a "well connected family," later recanted. Docket Entry No. 1. Plaintiff avers, *inter alia*, that his rights were violated when Defendants conspired to, and in fact did, revoke his probation because, as Caucasian men who were "raised and socialized in the South," and who held "very racist and offensive views of Black's [*sic*] in general," they "made a decision that they would teach Plaintiff a lesson" and arrest him because he had had a sexual relationship with a Caucasian female. *Id.* Plaintiff argues that his arrest on domestic violence charges that the victim later recanted did not constitute good cause for the revocation of his probation and that there was no evidence that he violated the conditions of his probation.[3] *Id.* Plaintiff further contends that Defendant Stockwell, his court-appointed Public Defender at his revocation

---

[2] Plaintiff does not raise any claims concerning his original guilty plea to these offenses.

[3] Plaintiff does not discuss the specifics of the alleged recantation, or when or how it occurred.

3

hearing, refused to call any witnesses or cross-examine Defendant Darnell, Plaintiff's probation officer. Plaintiff avers that Defendant Stockwell perjured himself when he stated that he would file a timely notice of Appeal, but did not, instead avoiding Plaintiff's telephone calls and failing to respond to Plaintiff's letters for approximately ten months. *Id.* Plaintiff maintains that Defendants falsified documents and perjured themselves specifically to ensure that Plaintiff would be sent to prison, thereby depriving him of his liberty in retaliation for his sexual relationship with a Caucasian female. *Id.*

Plaintiff further avers that the "Coffee County Defendants" contacted Defendant Parrish, the prison Parole Officer, and instructed her to "to do all she could to make sure Plaintiff was prevented from being certified for placement on the parole docket." Docket Entry No. 1. Plaintiff avers that Defendant Parrish complied with those instructions by "falsifying official TDOC documents to reflect an erroneous entry which showed that Plaintiff was out to court, which effective[ly] prevented Plaintiff from being certified for placement on the parole docket." *Id.* Plaintiff claims that when he informed Defendant Parrish that her actions were illegal and violated his rights, Defendant Parrish responded that "she would put him on the docket when she was good and ready," and that Plaintiff "shouldn't have been messing around with no white girls." *Id.*

Plaintiff avers that he wrote letters to Defendants Brown and Harden informing them of Defendant Parrish's behavior, but that neither Defendant Brown nor Defendant Harden intervened on his behalf. Docket Entry No. 1. Plaintiff further avers that he filed an official Appeal to the complete Parole Board and wrote a letter to the Tennessee Board of Parole explaining "the extent and nature of this conspiracy." *Id.* Plaintiff contends that Defendants

4

"fabricated evidence" by stating that they had reviewed the "recorded hearing record," "when in fact there was never ever a recording made of Plaintiff's Parole hearing." *Id.*

Plaintiff additionally avers that Defendants Parrish, Brown, and Harden conspired to destroy Plaintiff's grievances and prevent them from being properly adjudicated and answered. Docket Entry No. 1. Plaintiff contends that Defendants Parrish and Brown, with the approval of Defendant Harden, specifically told him that his grievances and letters "were pissing people off" and that he "would pay" for all of his "petty complaints." *Id.* Plaintiff maintains that Defendants had him transferred to Northwest Correctional Complex, "a notoriously violent and gang infested institution wherein assaults and murders are commonplace," even though Plaintiff's original offense had been nonviolent, and even though he had been sentenced to less than four years. *Id.* Plaintiff avers that five days after being transferred to Northwest Correctional Complex, he was assaulted. *Id.* Plaintiff argues that Defendants made a "conscious decision" that the "best way to keep Plaintiff in a state prison for as long as possible was to get him involved in some type of prison altercation, wherein he would be put on Maximum security classification and denied any possibility of parole - and perhaps even receive some more felony convictions and spend even more time in state custody." *Id.*

Plaintiff alleges that, after being involved in an altercation with another inmate, Defendant Mills and "other NWCX staff" "coerced" him to plead guilty to assault. Docket Entry No. 1. Specifically, Plaintiff avers that he was informed that, if he did not plead guilty, his fiancee and family would be charged with facilitating the commission of an assault and conspiracy to violate state law because they had accepted Plaintiff's telephone calls to their homes. *Id.* Plaintiff argues that he was "terrified" and denied access to any legal advice or legal

assistance. *Id.* Plaintiff states that he was "forced to unknowingly plead guilty to trumped up Disciplinary charges, which resulted in Plaintiff being put on maximum security and effectively prevented him from being placed on the parole docket, or earning good time." *Id.* Plaintiff contends that, as a result, he instead lost good time credit. *Id.*

Plaintiff avers that, as a result of Defendants' actions, he "is terrified of those in authority," "can't hold a steady job," has "constant" nightmares, needs psychological counseling, has "sever [*sic*] depression, trust issues, [and] adjustment disorders," is "physically and psychologically dependent upon others to assist him in order to survive," has physical scars and injuries from the "sever [*sic*] beatings" he has suffered, and is "mentally disabled." Docket Entry No. 1. Plaintiff seeks to hold Defendants jointly and severally liable for four million dollars in compensatory damages, two-hundred and fifty thousand dollars in "special damages," and one hundred and fifty thousand dollars in "pain and suffering" damages. *Id.*

Defendants filed the instant Motions to Dismiss on August 12, 2008 and September 18, 2008. Docket Entry Nos. 38 and 51. In their Motions, Defendants argue that Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6) because: (1) Plaintiff's Complaint fails to state a cognizable claim under 42 U.S.C. § 1983; (2) the Court lacks jurisdiction to review the revocation of Plaintiff's probation under the *Rooker-Feldman* doctrine; (3) Plaintiff's Complaint is time-barred; (4) Plaintiff is not entitled to due process protections during a parole grant hearing, Plaintiff was timely considered for parole, and the issue is moot because Plaintiff received a parole hearing, after which he was denied parole; (5) to the extent that Plaintiff sues Defendants in their official capacities, a suit against them is a suit against the State of Tennessee, which is not a "person" subject to suit under 42 U.S.C. § 1983, and the

6

Eleventh Amendment bars suits for money damages for State officials sued in their official capacities; (6) "false disciplinary charges" are not a Constitutional violation for which prison employees can be held liable; (7) judicial immunity bars all money damages against Defendant Circuit Court Judge Rollins; (8) prosecutorial immunity bars all money damages against the Defendant prosecutors for allegations pertaining to their roles as prosecutors in the judicial process; (9) public defenders do not act under color of state law when defending an accused; and (10) to the extent applicable, Defendants are qualifiedly immune. *Id.*

Plaintiff has filed a "Response to Defendant's [*sic*] Motion to Dismiss Complaint" (Docket Entry No. 55) and a "Motion in Opposition to Defendants Motion to Dismiss Plaintiff's Complaint on the Grounds of Being Absolutely Immune from Suit" (Docket Entry No. 62), as well as a supporting Memorandum of Law (Docket Entry No. 62). Plaintiff maintains that Defendants' Motions should be denied because he has specifically identified the rights he feels were violated and because his suit was timely. Docket Entry No. 55. Plaintiff concedes that he was not entitled to due process protections during his parole hearing, but argues that his due process rights were violated because he "was twelve months late seeing the parole board," and because he was only permitted to go before the parole board on one occasion. *Id.* Plaintiff further concedes that the State is not a person subject to suit under 42 U.S.C. § 1983, but argues that Defendants acted with indifference towards him, had "hidden motives" while acting in their official capacities, and used their official powers to "conduct misconduct" towards him. *Id.* Plaintiff also concedes that having "false disciplinary charges" brought against him is not a constitutional violation, but argues that he filed suit against the Wardens "because of supervisory liability." *Id.* Plaintiff additionally concedes that the doctrine of judicial immunity bars money

7

damages against a judge acting in his official capacity, but argues that Defendant Rollins waived his immunity when he knowingly participated in the conspiracy and when he used his judicial powers to "commit wrongdoing and misconduct" against Plaintiff in violation of his Constitutional rights. *Id.* Plaintiff argues the same with regard to prosecutorial immunity and the Defendant prosecutors, and further argues that Defendants are entitled to assert the defense of qualified immunity only. *Id.*; Docket Entry No. 62. Plaintiff avers that the Defendant public defenders likewise violated his rights because they knowingly participated in the conspiracy to violate his rights. Docket Entry No. 55. Plaintiff concedes that he cannot challenge his sentence and conviction through a lawsuit pursuant to 42 U.S.C. § 1983, but argues that he is not challenging his sentence. *Id.* Finally, Plaintiff argues that Defendants are "using their powers" to impede the progress of his appeal. *Id.*

For the reasons set forth below, the undersigned recommends that Defendants' Motions to Dismiss be GRANTED.

## **II. Analysis**

As grounds for their Motions to Dismiss, Defendants rely upon Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Docket Entry Nos. 38 and 51. Fed. R. Civ. P. 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction, while Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.

When challenging a court's subject matter jurisdiction under Rule 12(b)(1), a defendant may either facially attack the plaintiff's complaint by testing the sufficiency of the pleading itself, or by arguing the existence or non-existence of facts that would deprive a court of subject matter jurisdiction. *See Smith v. Northwest Airlines, Inc.*, 141 F. Supp. 2d 936, 939-40 (W.D.

8

Tenn. 2001) (citations omitted).

Rule 12(b)(6) permits a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. V. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* at 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

The Court is required to construe the complaint in the light most favorable to the plaintiff and to accept all well-pleaded allegations of fact as being true. *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). Despite the Court's responsibility to liberally construe the complaint in the plaintiff's favor, however, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Accordingly, the Court does not have to accept as true mere legal conclusions and unwarranted inferences of fact. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Finally, while pro se complaints are to be construed liberally (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), that liberality does not allow a court to conjure up unpled facts. *McFadden v.*

9

*Lucas*, 713 F.2d 143, 147 n.4 (5th Cir. 1983); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077 (1978).

In the case at bar, Plaintiff's Amended Complaint is comprised of conclusory allegations arguing that Defendants engaged in a racial and retaliatory conspiracy to deprive him of his Constitutional and statutory rights. *See* Docket Entry No. 1. Although Plaintiff repeatedly avers that Defendants conspired against him because he is an African American male who engaged in a sexual relationship with a Caucasian female from a "well connected family", Plaintiff does not allege specific details pertaining to the formation of, or action by, that conspiracy. Conspiracy claims must be plead with some degree of specificity, and conclusory allegations unsupported by material facts will not be sufficient to state a claim under 42 U.S.C. § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Additionally, a prisoner cannot sustain a cause of action under § 1983 for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, unless and until his conviction or sentence has been reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); *Edwards v. Balisok,* 520 U.S. 641 (1997) (Inmate's section 1983 claim challenging the procedures employed in his prison disciplinary conviction implies the invalidity of the disciplinary conviction and, therefore, was not cognizable unless the inmate showed that his disciplinary conviction had previously been invalidated). Plaintiff has neither alleged, nor demonstrated, that his criminal convictions have been reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. If this Court were to find in favor of Plaintiff, it would necessarily imply the invalidity of his arrest, imprisonment,

10

revocation hearing, and the denial of his parole. Plaintiff could then seek to use that judgment to collaterally attack his criminal conviction, which the Supreme Court has ruled impermissible. Because Plaintiff's conviction or sentence has not been invalidated, his § 1983 claims are not cognizable. *Id.* at 486-487; 2372.

Moreover, the *Rooker-Feldman* Doctrine prohibits a federal district court from hearing an appeal of a case already litigated in state court, even if the state court judgment might have been erroneous. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *See also, Gottfried v. Medical Planning Services, Inc.*, 142 F.3d 326 (6th Cir. 1998). Accordingly, this Court cannot review Plaintiff's probation revocation.

With regard to Plaintiff's allegations that Defendants violated his rights when they conspired to keep him incarcerated by delaying his parole hearing and by permitting him to receive only one parole hearing during his incarceration, prisoners do not have an absolute right to be released from confinement prior to the expiration of their sentence, as parole is a privilege, not a right. Tenn. Code Ann. §§ 40-28-117(a), 40-35-503(b); *Arnold v. Tennessee Bd. Of Paroles*, 956 S.W.2d 478, 482 (Tenn. 1997). *See also, Graham v. State*, 202 Tenn. 423, 426, 304 S.W.2d 622, 623-624 (1957); *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999). Because Plaintiff did not have a Constitutional right to be conditionally released before the expiration of a valid sentence, he does not have a Constitutionally-protected liberty interest in parole. Tenn. Code Ann. § 40-35-503(b); *Wright v. Trammell*, 810 F.2d 589, 591 (6th Cir. 1987). The Constitution does not guarantee Plaintiff the right to have a parole hearing within a certain period of time or to have a parole hearing at all. Plaintiff, therefore, cannot sustain his

11

claim that his Constitutional rights were violated because his parole hearing was "delayed," and because he received only one parole hearing. Although it did not occur as quickly as he would have liked, Plaintiff did receive a parole hearing, after which his request for parole was denied. Plaintiff has failed to state a claim upon which relief can be granted with respect to this claim.

Inasmuch as Plaintiff sues any of the Defendants in their official capacities, Defendants are not subject to suit under § 1983 in their official capacities, as a suit against State officials in their official capacities is considered to be a suit against the State, which is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Eleventh Amendment bars suits for money damages against the State and State officials sued in their official capacities. *Id.* at 66. Additionally, the Supreme Court has held that civil rights claims do not abrogate Eleventh Amendment immunity (*Quern v. Jordan*, 440 U.S. 332, 339-345, (1979)) and Tennessee has not waived its Eleventh Amendment immunity for civil rights suits (*American Civil Liberties Union v. Tennessee*, 496 F. Supp. 218 (M.D. Tenn. 1980)). Accordingly, Plaintiff cannot sustain this claim.

With respect to Plaintiff's allegations that Defendants filed false disciplinary charges against him, and subjected him to disciplinary actions and administrative segregation, the Sixth Circuit discussed a similar situation in *Person v. Campbell*, 1999 U.S. App. LEXIS 14091 (6th Cir. 1999). In *Person*, plaintiff contended that one of the defendants had filed a false disciplinary charge against him and that other defendants had wrongfully convicted him and imposed segregation penalties, as well as a loss of good-time credits. The District Court dismissed Plaintiff's claims as frivolous, and the Sixth Circuit upheld that dismissal stating in part as follows:

12

> First, the filing of false disciplinary charges against an inmate does
> not constitute a constitutional violation redressable under § 1983.
> . . . Second, a claim for monetary and equitable relief complaining
> only of procedural defects in a prison disciplinary hearing which,
> if established, would imply the invalidity of the punishment
> imposed, is not cognizable under § 1983. . . . Third, an inmate has
> no liberty interest in remaining free of disciplinary or
> administrative segregation, as such segregation does not impose an
> "atypical and significant hardship on the inmate in relation to the
> ordinary incidents of prison life."

1999 U.S. App. LEXIS 14901 at *3-5 (6th Cir.) (citations omitted).

Moreover, Plaintiff concedes that "having false disciplinary charges" brought against him is not a constitutional violation, but he argues that he filed suit against the wardens "because of supervisory liability." Section 1983 liability, however, cannot be predicated upon the theory of *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

With regard to Plaintiff's allegations that Defendant Judge Rollins revoked his probation in retaliation for his having a sexual relationship with a Caucasian female from a "well connected family," Judge Rollins is protected by judicial immunity. Judicial immunity protects judges of general jurisdiction from being held civilly liable for their judicial acts, even though their acts may be in excess of their jurisdiction or allegedly done maliciously or corruptly. *See Pierson v. Ray*, 386 U.S. 547 (1967). *See also Bradley v. Fisher*, 80 U.S. 335 (1872). Thus, if the judge has jurisdiction over the case and acts within the scope of his judicial duties, the judge is immune from liability. *See Kurz v. State of Michigan*, 548 F.2d 172, 174 (6th Cir. 1977). Defendant Rollins presided over Plaintiff's probation revocation hearing, and ruling on Plaintiff's case was within the scope of his judicial duties. Because Defendant Rollins acted

13

within the scope of his judicial duties, he is judicially immune from Plaintiff's claims. Accordingly, Plaintiff cannot sustain this claim.

Similarly, prosecutors are protected by prosecutorial immunity for claims levied against them for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995 (1976); *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000). Courts apply a functional analysis examining the nature of the function performed to determine whether the prosecutor's actions were "intimately associated with the judicial phase of the criminal process," and therefore protected. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 2613 (1993). In determining the nature of the function performed, the primary consideration is how closely related the prosecutor's challenged activity is to the prosecutor's role as an advocate intimately associated with the judicial phase of the criminal process. *Holloway v. Brush*, 220 F.2d 767, 775 (6th Cir. 2000).

Because the immunity attaches to the prosecutorial function, not the manner in which a prosecutor performs it, prosecutorial immunity provides protection from judicial scrutiny of the motives for the prosecutor's actions. *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997). "Absolute immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Grant v. Hollenback*, 870 F.2d 1135, 1138 (6th Cir. 1989). Allegations of conspiracy do not abrogate a prosecutor's immunity. *Imbler v. Pachtman*, 424 U.S. 409, 415-416, 422-425 (1976).

Plaintiff alleges that the prosecutorial Defendants conspired to violate his rights during his revocation hearing and during his assault plea by having his probation revoked and by having

14

him "plead guilty to assault."[4] Plaintiff does not argue that the prosecutorial Defendants engaged in activities outside the scope of their prosecutorial duties, but rather, argues that the prosecutorial Defendants, motivated by racial and retaliatory animus, conspired to revoke his probation and to have him remain incarcerated for a longer period of time. As discussed above, however, allegations of conspiracy do not abrogate a prosecutor's immunity (*Imbler, supra*), and absolute immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously (*Grant, supra*). Accordingly, because the prosecutorial Defendants' actions were within the scope of their prosecutorial duties and therefore "intimately associated with the judicial phase of the criminal process," they are protected by prosecutorial immunity. Plaintiff's claim against them fails.

Additionally, the prosecutorial Defendants are state employees, as they are "employed in the service of and whose compensation is payable by the state." Tenn. Code Ann. § 8-42-101 *et seq*. The prosecutorial Defendants' actions with respect to Plaintiff were within the course and scope of their prosecutorial duty. Accordingly, Plaintiff's state law claims against these Defendants should be dismissed as well, pursuant to the State's sovereign immunity, Tenn. Code Ann. § 9-8-307(h), and Tenn. Code Ann. § 8-14-209.

Plaintiff also sues the Defendants who were public defenders, averring that they violated his rights because they knowingly participated in the conspiracy to violate his rights. A fundamental element for sustaining a § 1983 cause of action is that the person who allegedly violated Plaintiff's rights acted under color of law. *See* 42 U.S.C. § 1983. *See also, West v.*

---

[4] It does not appear that Plaintiff was ever actually charged with or convicted of the crime of assault; rather, it seems that Plaintiff is referring to the prison disciplinary charge of assault discussed above.

15

*Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331(1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

The Supreme Court has held that a public defender does not act under color of state law when representing an indigent defendant in a state criminal proceeding because such a defense lawyer characteristically opposes the designated representative of the state. *See Polk County v. Dodson*, 454 U.S. 312 (1981). The Supreme Court stated that performing such adversarial functions as entering "not guilty" pleas, moving to suppress the state's evidence, or objecting to evidence at trial were essentially private functions, "traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 319. Because the public defender Defendants did not act under color of state law, Plaintiff's § 1983 claims against them should be dismissed.

Additionally, even though they do not act under color of state law, the public defender Defendants are state employees, as they are "employed in the service of and whose compensation is payable by the state." Tenn. Code Ann. § 8-14-202 and -208, *et seq. See also*, Tenn. Code Ann. § 8-42-101(a)(3). The public defender Defendants' actions with respect to Plaintiff were within the course and scope of the public defender's duty. Accordingly, Plaintiff's state law claims against these Defendants should be dismissed as well, pursuant to the State's sovereign immunity, Tenn. Code Ann. § 9-8-307(h), and Tenn. Code Ann. § 8-14-209.

16

For the reasons stated above, Plaintiff has failed to state a claim upon which relief can be granted under § 1983 against any of the Defendants.[5]

Because Plaintiff has no federal cause of action, the Court should decline to exercise jurisdiction over any of his state law claims. *See* 28 U.S.C. § 1367(c)(3); *Hankins v. The Gap, Inc.,* 84 F.3d 797, 803 (If federal claims are dismissed before trial, state claims should generally be dismissed as well.).

### III.  Conclusion

For the foregoing reasons, the undersigned recommends that  Defendants' Motions to Dismiss (Docket Nos. 38, 51) be GRANTED and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[5]  As discussed above, the pending Motions to Dismiss cover all the Defendants named in Plaintiff's "Amended Complaint," with the exception of "C. O. 1 Collins," who has not been served.  Nevertheless, Plaintiff has failed to state a claim against Defendant Collins under § 1983, and the undersigned recommends that Plaintiff's claims against Defendant Collins be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge